# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CHRISTINE ROBINSON and LINDA WHITE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FAMILY DOLLAR, INC., <br><br> Defendant. | Case No. 2:22-cv-02182 <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiffs Christine Robinson and Linda White ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Family Dollar, Inc. ("Defendant" or "Family Dollar").

## CLASS ACTION COMPLAINT

1. Family Dollar is a value store chain that aspires to be "[t]he best small-format value and convenience retailer, serving the needs of [its] shoppers in the neighborhoods [it] serves."

2. Family Dollar sells groceries and household goods at discounted prices in stores throughout the United States including over-the-counter medications, medical devices, dietary supplements, cosmetics, human food, and pet food (the "Products").

3. On or about February 18, 2022, Family Dollar temporarily closed 404 of its stores in Mississippi, Arkansas, Louisiana, Alabama, Missouri and Tennessee after the U.S. Food and

Drug Administration (FDA) announced that it had found unsanitary conditions, including a rodent infestation, inside Family Dollar Distribution Center 202 in West Memphis, Arkansas (the "Rodent Infestation").

4. The Rodent Infestation—that was never disclosed to Family Dollar consumers prior to the FDA and Family Dollar's announcements—poses a health and safety hazard to consumers.

5. There are numerous dangers associated with rodents including the potential presence of Salmonella, an organism which can cause serious and sometimes fatal infections in infants, young children, frail or elderly people, pregnant persons, persons with pre-existent pathology (e.g., patients with cancer undergoing chemotherapy treatments, organ transplant recipient, etc.) and others with weakened immune systems.

6. Family Dollar has had actual knowledge of the Rodent Infestation since at least March 29, 2021. Family Dollar knew or should have known of the Rodent Infestation from far earlier due to its obligation to inspect its facilities, including distribution centers, for safety and health-related issues. Nevertheless, Defendant chose to omit information about the Rodent Infestation and not to disclose Rodent Infestation to Plaintiffs and the Classes, so that it could continue to profit from the sale of the Products.

7. According to the New York Times:

> A recent Food and Drug Administration inspection of the facility, in West Memphis, Ark., found live and dead rodents "in various states of decay," rodent droppings, evidence of gnawing and nesting, and products stored in conditions that did not protect against these unsanitary conditions, the agency said in a statement on Friday.
>
> A fumigation of the facility last month revealed more than 1,100 dead rodents, **and a review of company records indicated the collection of more than 2,300 rodents from late March to September, "demonstrating a history of infestation**," the agency said.

8. It was only on February 18, 2022, that Family Dollar announced it would initiate a voluntary retail level product recall of some FDA-regulated products that were affected by the Rodent Infestation. Despite its knowledge, Defendant omitted information regarding the Rodent Infestation from all advertising, promotion, or other contacts with Plaintiffs and members of the Classes prior to their purchase of the Products and continued to ship the products to its stores from the warehouse. By knowingly failing to disclose the Rodent Infestation and associated risk of contamination to consumers and by failing to correct the problem, Plaintiffs and the Classes purchased Products of a lesser standard, grade and quality represented that do not meet ordinary and reasonable consumer expectations regarding the quality or value of the Products and are unfit for their intended purpose. Moreover, the contamination associated with the Rodent Infestation poses a health risk to consumers that used or handled the Products.

9. Plaintiffs bring this action on behalf of themselves and all those similarly situated (the "Classes," "Class Members,") for Defendant's deceptive trade practices in violation of the consumer protection laws of the States. Plaintiffs seek damages, attorney fees and costs, punitive damages, and the replacement of, or refund of money paid to purchase the Products, and any other legal relief available for their claims. Should Plaintiffs' demanded legal relief be unavailable or prove insufficient, Plaintiffs seek appropriate equitable and injunctive relief in the alternative pursuant to Fed. R. Civ. P. 8(a)(3).

## PARTIES

10. Plaintiff Linda White is, and at all times relevant hereto has been, a citizen of Memphis, Tennessee, located in Shelby County. Plaintiff White purchased medication, food, and cosmetics from on February 1, 2022 at Family Dollar Store Number 8027, located at 287 N. Cleveland St., Memphis, TN, 38104.

11. Plaintiff Christine Robinson is, and at all times relevant hereto has been, a citizen of

Memphis, Tennessee, located in Shelby County. Plaintiff Robinson purchased medical devices, cosmetics, and dietary supplements on February 1, 2022 at Family Dollar Store Number 10798, located at 10798, 306 E. Main Street, Adamsville, TN, 38310.

12. Defendant Family Dollar is incorporated under the laws of the state of North Carolina with its principal place of business located at 500 Volve Pkwy, Chesapeake, Virginia. Family Dollar is a brand under its parent company, Dollar Tree, Inc, a Virginia corporation with its principal place of business at the same location as Family Dollar. Defendant is responsible for the manufacturing, marketing, distribution, sale, and labeling of the Products to millions of consumers throughout the States, including in this District. Defendant created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Products.

13. The marketing and advertising relied on by Plaintiffs was disseminated throughout the States, including this District, by Defendant and its agents through advertising, packaging, and labeling that contained the omissions alleged herein. The marketing and advertising were designed to encourage consumers, and reasonably misled consumers, into purchasing the Products throughout the States, including this District.

14. This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d) for the following reasons: (a) some of the class members are citizens of a state that is different from the citizenship of the Defendant; (b) the putative class size is greater than 100 persons; (c) the amount in controversy in the aggregate for the putative class exceeds the sum of $5 million, exclusive of interest and costs; and (d) the primary defendant does not include States, State officials, and/or other governmental entities against whom the district court may be foreclosed from ordering relief.

15. This Court has original jurisdiction over this action under CAFA, 28 U.S.C. §1332(d), because, upon information and belief, no other class action has been filed asserting the same or similar factual allegations against the defendant on behalf of the same or other persons during the 3-year period preceding the filing of this class action.

16. This Court has personal jurisdiction over Plaintiffs, who are residents of the State of Tennessee. This Court has both general and specific personal jurisdiction over the Defendant, Family Dollar.

17. This Court has general personal jurisdiction over Defendant Family Dollar because Defendant operates in Tennessee and because Defendant advertises, markets, and sells the Products in Tennessee, accepts money from purchasers located in Tennessee, has engaged in systematic and continuous business activities in Tennessee, transacted substantial business with Tennessee entities and residents, and generally has sufficient minimum contacts in Tennessee to satisfy the Tennessee long arm statute.

18. This Court has specific personal jurisdiction over Defendant arising from Defendant's advertising, marketing, and sale of the Products in Tennessee, which at all relevant times, included or risked including dangerous substances, all of which have caused harm in Tennessee as a result of the specific business activities complained of herein, either directly or through Defendant's agents.

19. This Court has specific personal jurisdiction over Defendant because the advertising, marketing, and sale of the Products, which included or risked including dangerous substances, occurred in parts of Tennessee that are located in this District.

20. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2), because Plaintiffs reside here and ingested and handled the Products at issue within the confines of this

District.

21. Venue is proper in this District under 28 U.S.C. §1391(b)(1) & (2) and 28 USC §1391(d) because Defendant regularly conducts substantial business within this District.

22. Venue is also proper in this District under 28 U.S.C. §1391(b)(2) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in this District, namely Defendant's advertisement, sale, and marketing of the Products, which occurred in this District and caused financial harm to members of the putative class that reside in this District.

## FACTUAL BACKGROUND

23. On February 18, 2022, the U.S. Food and Drug Administration issued the following press release:

> Today, the U.S. Food and Drug Administration is alerting the public that several categories of FDA-regulated products purchased from Jan. 1, 2021, through the present from Family Dollar stores in Alabama, Arkansas, Louisiana, Mississippi, Missouri and Tennessee may be unsafe for consumers to use. The impacted products originated from the company's distribution facility in West Memphis, Arkansas, where an FDA inspection found insanitary conditions, including a rodent infestation, that could cause many of the products to become contaminated. The FDA is working with the company to initiate a voluntary recall of the affected products.
>
> "Families rely on stores like Family Dollar for products such as food and medicine. They deserve products that are safe," said Associate Commissioner for Regulatory Affairs Judith McMeekin, Pharm.D. "No one should be subjected to products stored in the kind of unacceptable conditions that we found in this Family Dollar distribution facility. These conditions appear to be violations of federal law that could put families' health at risk. We will continue to work to protect consumers."
>
> This alert covers FDA-regulated products purchased from Family Dollar stores in those six states from Jan. 1, 2021, through the present. Some examples of these products include human foods (including dietary supplements (vitamin, herbal and mineral supplements)), cosmetics (skincare products, baby oils, lipsticks, shampoos, baby wipes), animal foods (kibble, pet treats, wild bird seed), medical devices

6

> (feminine hygiene products, surgical masks, contact lens cleaning solutions, bandages, nasal care products) and over-the-counter (OTC) medications (pain medications, eye drops, dental products, antacids, other medications for both adults and children).
>
> Consumers are advised not to use and to contact the company regarding impacted products. The agency is also advising that all drugs, medical devices, cosmetics and dietary supplements, regardless of packaging, be discarded. Food in non-permeable packaging (such as undamaged glass or all-metal cans) may be suitable for use if thoroughly cleaned and sanitized. Consumers should wash their hands immediately after handling any products from the affected Family Dollar stores.
>
> Consumers who recently purchased affected products should contact a health care professional immediately if they have health concerns after using or handling impacted products. Rodent contamination may cause Salmonella and infectious diseases, which may pose the greatest risk to infants, children, pregnant women, the elderly and immunocompromised people.
>
> Following a consumer complaint, the FDA began an investigation of the Family Dollar distribution facility in West Memphis, Arkansas, in January 2022. Family Dollar ceased distribution of products within days of the FDA inspection team's arrival on-site and the inspection concluded on Feb. 11. Conditions observed during the inspection included live rodents, dead rodents in various states of decay, rodent feces and urine, evidence of gnawing, nesting and rodent odors throughout the facility, dead birds and bird droppings, and products stored in conditions that did not protect against contamination. More than 1,100 dead rodents were recovered from the facility following a fumigation at the facility in January 2022. Additionally, a review of the company's internal records also indicated the collection of more than 2,300 rodents between Mar. 29 and Sep. 17, 2021, demonstrating a history of infestation.[4]

24. On the same day, Family Dollar issued a press release indicating it was initiating a voluntary retail level product recall of "certain products regulated by the [FDA] that were stored and shipped to 404 stores from Family Dollar Distribution Center 202 in West Memphis, Arkansas from January 1, 2021, through the present due to the presence of rodents and rodent activity at Family Dollar Distribution Center 202."

25. Family Dollar acknowledges the health and safety concerns arising from the Rodent

7

Infestation.

> There are numerous hazards associated with rodents including the potential presence of *Salmonella*. Use or consumption of affected products may present risk of illness due to the potential presence of *Salmonella*, an organism which can cause serious and sometimes fatal infections in infants, young children, frail or elderly people, pregnant persons, persons with pre-existent pathology (e.g., patients with cancer undergoing chemotherapy treatments, organ transplant recipient, etc.) and others with weakened immune systems. Healthy persons infected with *Salmonella* often experience fever, diarrhea (which may be bloody), nausea, vomiting and abdominal pain. In rare circumstances, infection with *Salmonella* can result in the organism getting into the bloodstream and producing more severe illnesses such as arterial infections (*i.e.*, infected aneurysms), endocarditis and arthritis

26. Defendant's voluntary recall is limited in scope to certain FDA products:

Products covered by this retail level recall include all: (i) drugs; (ii) medical devices; (iii) cosmetics; (iv) dietary supplements; and (v) human and animal (pet) food products. The recall does not apply to products shipped directly to the stores by the distributor or manufacturer, such as all frozen and refrigerated items. The 404 stores to which this recall applies are listed on the attached schedule. The recall does not apply to other store locations.

27. It was only on February 18, 2022, that Family Dollar announced it would initiate a voluntary retail level product recall of some FDA-regulated products that were affected by the Rodent Infestation. Despite its knowledge, Defendant omitted information regarding the Rodent Infestation from all advertising, promotion, or other contacts with Plaintiffs and members of the Classes prior to their purchase of the Products and continued to ship the products to its stores from the warehouse.

28. By knowingly failing to disclose the Rodent Infestation and associated risk of contamination to consumers and by failing to correct the problem, Plaintiffs and the Classes purchased Products of a lesser standard, grade and quality represented that do not meet ordinary and reasonable consumer expectations regarding the quality or value of the Products and are unfit for their intended purpose. Moreover, the contamination associated with the Rodent Infestation poses a health risk to consumers that used or handled the Products.

### A. Defendant Has Committed Fraud Under F.R.C.P. Rule 9(b)

29. Rule 9(b) of the Federal Rules of Civil Procedure provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." And, while the Defendant is in the best position to know what content they placed in advertising and in other materials during the Class period, to the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

30. **WHO**: Defendant made material misrepresentations and/or omissions of the fact that the Products had certain representations made about them – namely, that they adequately provide air purification for a recommended room size, when they do not pursuant to industry accepted standards.

31. **WHAT**: Defendant's conduct here was, and continues to be, fraudulent because it omitted and concealed the fact that the representations about the Products were false.

32. **WHEN**: Upon information and belief, the Defendant's conduct here took place during the Class period – with a record reaching as far back as 2016; however, it is possible that the Defendant was selling similar products into commerce even earlier than 2016. The Plaintiffs and members of the putative Class will have further clarity on the timing of sales based on the records that the Defendant ultimately provides in the discovery portion of this Action.

33. **WHERE**: The material misrepresentations and omissions were made on the Defendant's website, on their social media accounts, in advertising and marketing, and in other places – like through customer service representatives. The Defendant exerted control over these material misrepresentations and omissions.

34. **WHY**: Defendant engaged in systematic misrepresentations and omissions

because it propped up their sales and helped them succeed financially, to the detriment of consumers who unwittingly believed in the representations and omissions made by the Defendant.

35. **HOW**: The material misrepresentations and omissions were made on the Defendant's website, on their social media accounts, in advertising and marketing, and in other places – like through customer service representatives.

36. **INJURY**: Consumers have been harmed because they bought goods and likely paid a premium for those same goods which did not work as advertised.

37. As such, consumers, such as Plaintiffs and members of the putative Class, were harmed and they would not have purchased or would have paid substantially less for the Products had they been advertised correctly – which is to say that they would have been advertised as containing harmful ingredients from rodents.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs bring this action individually and as representative of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Classes:

> **National Class:** During the fullest period allowed by law, all persons in the United States who purchased any of the Products for personal use and not for resale within the United States (the "National Class").
>
> **Tennessee State Class:** During the fullest period allowed by law, all persons in the State of Tennessee who purchased any of the Products for personal use and not for resale within the State of Tennessee (the "Tennessee Subclass").

39. Members of the classes described are referred to as "Class Members" or members of the "Classes."

40. The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest

(as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

41. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

42. Numerosity – Federal Rule of Civil Procedure 23(a)(1). The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiffs but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

43. Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3). Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

   a. Whether Defendant knew, or should have known, the Products contained harmful ingredients;

   b. Whether Defendant took, or should have taken, measures to make sure the Products did not contain harmful ingredients;

  c. Whether Defendant knowingly made misleading statements in connection with consumer transactions that reasonable consumers were likely to rely upon to their detriment;

  d. Whether Defendant knew or should have known that the representations and advertisements regarding the Products was false and misleading;

  e. Whether Defendant's conduct violates public policy;

  f. Whether Defendant's acts and omissions violate Tennessee law;

  g. Whether Plaintiffs and the Class Members did not receive the benefit of their bargain when purchasing the Products;

  h. Whether the Plaintiffs and the Class Members suffered monetary damages, and, if so, what is the measure of those damages;

  i. Whether Plaintiffs and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

44. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

45. Typicality – Federal Rule of Civil Procedure 23(a)(3). Plaintiffs' claims are typical of the claims of the other Class Members, as each class member was subject to the same omission of material fact and misrepresentations regarding the Products' illegal ingredients and unlawful implied disease claims. Plaintiffs share the aforementioned facts and legal claims or

questions with Class Members, and Plaintiffs and all Class Members have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiffs and all Class Members sustained monetary and economic injuries.

46. Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the Classes because they are a member of the Classes and their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

47. Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1). Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

48. Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and all Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

49. Superiority – Federal Rule of Civil Procedure 23(b)(3).  A class action is superior

to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
### VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT
(TENN. CODE ANN. § 47-18-101, et seq.)
(brought on behalf of the Tennessee Class)

50. Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

51. This claim is brought on behalf of Tennessee residents.

52. Plaintiffs are "natural persons" and "consumers" within the meaning of TENN. CODE ANN. § 47-18-103(2).

53. Defendant is a "person" within the meaning of TENN. CODE ANN. § 47-18-103(2).

54. Defendant's conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of TENN. CODE ANN. § 47-18-103(19).

55. The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not

limited to: "Representing that goods or services have … characteristics, [or] … benefits … that they do not have…;" "Representing that goods or services are of a particular standard, quality or grade… if they are of another;" and "Advertising goods or services with intent not to sell them as advertised." TENN. CODE ANN. § 47-18-104.

56. By concealing the risks and harms associated with the use and handling of the Products (which due to the Rodent Infestation and other unsanitary conditions contain or have a risk of containing Salmonella or other infectious diseases), Defendant engaged in deceptive business practices, including representing that Products have characteristics, uses, benefits, and qualities which they do not have; representing that Products are of a particular standard, quality, and grade when they are not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce. All of this deception would be material to a reasonable consumer.

57. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products.

58. By failing to disclose and by actively concealing the defects in the Products, Defendant engaged in unfair and deceptive business practices.

59. In the course of Defendant's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Products.

60. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs.

61. Defendant intentionally and knowingly misrepresented material facts regarding

the Products.

62. Defendant knew or should have known that its conduct was violative.

63. Defendant owed a duty to disclose the true safety and reliability of the Products.

64. Because Defendant fraudulently concealed the harms and risks associated with the Products, consumers were deprived of the benefit of their bargain since the Products purchased were worth less than they would have been if they were free from such harms and risks.

65. Plaintiffs suffered ascertainable losses caused by Defendant's misrepresentations and its concealment.

66. As a direct and proximate result of Defendant's violations, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Defendant's misconduct, Plaintiffs and the Class incurred damages.

67. Pursuant to TENN. CODE § 47-18-109(a), Plaintiffs seek monetary relief against Defendant measured as actual damages in an amount to be determined at trial, treble damages as a result of Defendant's willful or knowing violations, and any other just and proper relief available under the Tennessee CPA.

**COUNT II**
**NEGLIGENCE**
**(brought on behalf of both the National Class and Tennessee Class)**

68. Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

69. Defendant owed a duty to Plaintiffs and the Classes to exercise reasonable care in the sale, quality control and marketing of the Products.

70. Defendant breached its duty to Plaintiffs and the Classes by marketing, selling, advertising and warranting defective Products (which contain or have a risk of containing Salmonella or other infectious diseases) to Plaintiffs and the Classes, and by failing to take those

steps necessary to discontinue selling the Products to consumers.

71.  Defendant was aware, or reasonably should have been aware, that the Products were harmful and did not perform their intended use.

72.  When they purchased the Products, Plaintiffs and the Classes were unaware of their unsafe and dangerous nature.

73.  As a direct and proximate cause of the foregoing, Plaintiffs and the Classes have suffered and will continue to suffer damages and economic loss described fully above.

74.  Plaintiffs and the Classes are entitled to damages in an amount to be determined at trial.

## COUNT III
## BREACH OF IMPLIED WARRANTY
**(brought on behalf of both the National Class and Tennessee Class)**

75.  Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

76.  Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Class members.

77.  There was a sale of goods from Defendant to Plaintiffs and the Class members.

78.  As set forth herein, Defendant marketed and sold the Products, and prior to the time the Products were purchased by Plaintiffs and the Classes, Defendant impliedly warranted to them that they were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Products' packages and labels that they did not.

79.  Plaintiffs and the Classes relied on Defendant's promises and affirmations of fact.

80.  Contrary to these representations and warranties, the Products were not fit for their ordinary use and did not conform to Defendant's representations.

81.  Defendant breached the implied warranties by selling Product that risk serious

harm and Defendant were or should have been on notice of this breach.

82. As a direct and proximate result of Defendant's conduct, Plaintiffs and the Classes have suffered actual damages in that they have purchased the Products that are worth less than the price they paid and that they would not have purchased at all had they known the harms and risks that the Products contained.

## COUNT IV
## UNJUST ENRICHMENT
### (brought on behalf of both the National Class and Tennessee Class)

83. Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

84. Substantial benefits have been conferred on Defendant by Plaintiffs and the Classes through the purchase of the Products. Defendant knowingly and willingly accepted and enjoyed these benefits.

85. Defendant either knew or should have known that the payments rendered by Plaintiffs and the Classes were given and received with the expectation that the Products would have the qualities, characteristics, ingredients, and suitability for use represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

86. Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Classes.

87. Plaintiffs and the Classes are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

## RELIEF DEMANDED

WHEREFORE, Plaintiffs, individually and on behalf of a class of all others similarly situated, seek a judgment against Defendant, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class representatives and Plaintiffs' attorneys as Class Counsel;

b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d. For compensatory, statutory, and punitive damages, as applicable, in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees, expenses and costs incurred in bringing this lawsuit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: March 24, 2022                                  Respectfully submitted,

/s/ Gregory F. Coleman
Gregory F. Coleman (TN Bar No. 14092)
**MILBERG COELMN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN  37929
T:  865-247-0047
F:  865-522-0049
gcoleman@milberg.com

J. Hunter Bryson*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC, 27603
T:  919-600-5000
F:  919-600-5035
hbryson@milberg.com

Gary M. Klinger*
**MILBERG COELMN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
T:  865-247-0047
F:  865-522-0049
gklinger@milberg.com

*Attorneys for the Plaintiffs and the Proposed Class*

*\*Pro hac vice forthcoming*